49 CCPA

**Application of Leo PRICE.**

**Patent Appeal No. 6775.**

United States Court of Customs and Patent Appeals.

May 18, 1962.

Ely, Pearne & Gordon, and Albert L. Ely, Jr., Cleveland, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the rejection of claim 7 in application Ser. No. 759,833, filed September 8, 1958, for the reissue of appellant's patent No. 2,709,854 granted June 7, 1955, for "Gauge Mounting."

Since the application for reissue was filed more than two years after the issuance of the patent, the following prohibition of 35 U.S.C. § 251 applies:

> "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

The sole ground of rejection of claim 7 is that it is broader than any claim of the patent.

■ For the purposes of the issue here, a claim is broader under section 251 if it is broader in any respect, though it be narrower in some other respect. In re Rogoff, 261 F..2d 601, 46 CCPA 733, and cases there cited.

■ Appellant and the Patent Office have argued the case on the apparent assumption that if claim 7 is broader than claim 6 of the patent, then the "scope of the claims of the original

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

patent" has been enlarged.[1] We shall proceed on the same assumption.

A brief description of the invention will facilitate understanding of the ensuing discussion. It relates to a device for gauging manufactured parts of complex shapes, exemplified in the application by a turbine bucket or blade which is tapered from base to top, concave on one side, and convex on the other. By means of the gauge it can be determined whether the part has the dimensions it is supposed to have. To accomplish this, the blade is accurately mounted centrally in the device in a vertical position relative to an imaginary reference line and a plurality of "guillotine gauge blades" having ends shaped to match the desired article surfaces at different levels are moved horizontally into contact with the article from opposite sides. The gauge blades must be accurately and slidably supported and accurately dimensioned in length. As aforesaid, the inner ends are shaped to engage the article and their outer ends are provided with two end surfaces for plus and minus gauging, which is done by comparing their final positions with a "reference plane" when the gauge blade is in firm engagement with the object being gauged. On either side of the center of the gauging device, mounted on the base, there are stacks of alternating spacer blocks and gauge blocks, each stack being positioned on a pair of fixed vertical posts and bolted in place. As shown in the drawings, the spacer blocks and gauge blocks have corresponding outlines so that the stack has a uniform outer surface. That part of the surface which is adjacent to the outer ends of the gauge blades is a plane surface and serves as the reference plane, above mentioned. Each guide block has a shallow groove centrally disposed in its upper face which closely fits and guides the gauge blade which slides in it. On either side of the groove are the openings which position the block on the posts. As shown, the spacer blocks have identical openings though it is apparent that one could have an operative device even if they had no openings at all. The spacer blocks could be positioned between the posts so as to space the guide blocks and so as to provide the flat surfaces which hold the gauge blades in place in the guide block grooves which are bridged by plane spacer block surfaces.

Claim 6 of the patent, with which comparison is being made to determine whether the rejected claim is broader, reads as follows, critical words, hereinafter discussed, being italicized for convenience:

"6. The combination of a base member, guide blocks and spacer blocks for mounting a plurality of guillotine gauge blades reciprocal in said guide blocks relative to an article to be gauged, said base member having a centrally located primary reference line vertically disposed and at right angles to the horizontal plane of the base member, means for securing an article orienting mechanism to said base member to orient an article relative to said primary reference line, said base member having openings on opposite sides of, and disposed on secondary reference lines equidistantly from, said primary reference line, said guide blocks and spacer blocks being stacked over said base member adjacent its opposite ends, *said blocks* having openings therethrough axially aligned with each other and with openings in said base member, said guide blocks each having a side disposed away from said primary reference line and positioned equidistantly from said secondary reference

1. The patent appears to have had six claims. It was sued on in Winslow Mfg. Co. v. Peerless Gage in the United States District Court for the Northern District of Ohio, Eastern Division, D.C., 202 F.Supp. 931, and on June 11, 1958, claim 6 was held invalid as indefinite and incomplete. Appellant tells us claim 6 is the broadest claim of the patent. This reissue application was filed, claim 6 augmented, and claim 7 added. Claims 1–6 stand allowed and are included in the record. We have compared claim 7 only with claim 6 of the patent, however.

lines, said sides *forming* reference planes for comparison with the positions of said gauge blades in the guide blocks, said reference planes being equidistantly spaced from, and on opposite sides of, said primary reference line."

The rejected claim reads, with similar added emphasis:

"7. The combination of a base member defining a horizontal plane and having a centrally located primary reference line disposed vertically and at right angles to said horizontal plane, means for securing an article orienting mechanism to said base member to orient an article relative to said primary reference line, guide blocks and spacer blocks for mounting a plurality of guillotine gauge blades in said guide blocks for movement toward and away from an article to be gauged while the article is oriented by said orienting mechanism, said base member having openings on opposite sides of, and disposed on secondary reference lines equidistantly from, said primary reference line, said guide blocks and spacer blocks being stacked over said base member adjacent its opposite ends, *said guide blocks* having openings therethrough axially aligned with openings in other guide blocks in a stack and with a corresponding opening in said base member, said guide blocks each having a side disposed away from said primary reference line and positioned equidistantly from said secondary reference lines, said sides *locating* reference planes from which the positions of said gauge blades in the guide blocks may be compared, said reference planes being equidistantly spaced from, and on opposite sides of, said primary reference line, and means, including means secured in said openings in said base member and extending vertically through said aligned openings in stacks of guide blocks, to secure each guide block above said base member

in a fixed position relative to said reference lines."

The Patent Office contends that claim 7 is broader than claim 6 of the patent in two respects: (a) a change in the claim language with respect to the openings in the guide and spacer blocks, and (b) a change in the language with respect to the reference planes. If claim 7 is broader in either of these respects, rejection of the claim was proper. For the sake of completeness, however, we shall consider both.

### (a) *Block Openings*

On this point the corresponding language of claim 6 and rejected claim 7 read as follows:

Claim 6:

"* * * *said guide blocks and spacer blocks* being stacked over said base member adjacent its opposite ends, *said blocks* having openings therethrough axially aligned with each other and with openings in said base member, * * *." [Emphasis ours.]

Claim 7:

"* * * *said guide blocks and spacer blocks* being stacked over said base member adjacent its opposite ends, *said guide blocks* having openings therethrough *axially aligned with openings in other guide blocks in a stack and with a corresponding opening* in said base member, * *." [Emphasis ours.]

The examiner's position was that the normal meaning of the claim 6 language would be that *all* of the blocks had openings as defined but added that, even if this were not so, the antecedent of "said blocks" was both guide blocks and spacer blocks, saying:

"We see therefore by inserting the word guide before 'blocks' in the term 'said blocks' that the claim now requires only that the guide blocks have openings therethrough while claim 6 requires that both the guide and spacer blocks have holes therethrough."

In affirming, the board held that, as a minimum, claim 6 required that "at least one guide block and at least one spacer block * * * have openings, as recited."

Appellant would have us hold that the insertion of the word "guide" in claim 7 is a "narrowing statement." Whatever it may be, it certainly is not narrowing since it *removes a limitation in claim 6* requiring, by a most liberal view, that at least one spacer block has to have the defined opening. Appellant's argument disputes the holding that claim 6 does contain that limitation and is the equivalent of asking us to read into claim 6 the meaning that only *some of* "said blocks" have openings. We are asked to hold further that, as so read, the claim would be satisfied by two or more *guide* blocks having aligned openings. This argument further proposes that claim 7 should be restricted in its meaning to require that *all* the guide blocks have aligned openings, though the claim does not say so. All of this, says appellant, leads to the conclusion that, with respect to this point (a) under consideration, claim 7 is narrower than claim 6.

Having carefully considered these arguments, pro and con, we think there is no question but that, with respect to block openings, claim 7 is broader than claim 6. Claim 7 makes it crystal clear that there need be no openings at all in the spacer blocks. A normal reading of claim 6 leads one to the conclusion that the antecedent for the "said blocks" which have the aligned openings can be nothing other than "said guide blocks and spacer blocks." It seems as unreasonable to contend that all of them do not have openings, under claim 6, as it would be to contend that that claim does not require that all of those blocks do not have to be stacked over the base member. On an issue of this kind we think the board was more than liberal in going as far as it did in saying that the claim would be satisfied by openings in one guide block and one spacer block so as to include one of each category. We cer-

tainly cannot find ground for reversing its decision on point (a).

## (b) *The Reference Planes*

The phrases in question on this point are as follows:

Claim 6:

"* * * *said guide blocks each having a side* disposed away from said primary reference line and positioned equidistantly from said secondary reference lines, said sides *forming* reference planes for comparison with the positions of said gauge blades in the guide blocks, * * *."

Claim 7:

"* * * *said guide blocks each having a side* disposed away from said primary reference line and positioned equidistantly from said secondary reference lines, said sides *locating* reference planes *from which the positions of said gauge blades in the guide blocks may be compared,* * * *."

The difference here is between the outside faces of guide blocks *forming* reference planes, against which, for example, one can feel the end surfaces of the guillotine gauge blades to see how far in or out of alignment they may be with respect to the planes, and *locating* such reference planes.

Appellant presents this change of language to us as something which "improves, by more precise and accurate terminology, an inapt designation and description of appellant's invention." We have given careful attention to the supporting arguments but feel that the examiner takes the more tenable position in saying:

"The term 'locating' has not appeared previously in this case in this context. * * * The terms such as 'constitute' and 'form' used in the case heretofore indicate that the surfaces involved are part of the reference plane. The word locate is not defined in the specification but it does mean something else than what

is meant by the terms previously used. This term (locate) merely requires that the surfaces in question act as a reference point from which point the reference plane can be found. Thus as defined in claim 7 there is no longer a requirement that the surfaces be part of the reference plane. This is considered broader than the language of claim 6."

We think that the requirement of claim 6 that the guide block sides must *form* reference planes means that the sides must be flat and lie in planes. Considering that a plane can be *located* geometrically by three points, or a straight line and one point, the language of claim 7 gets away from the claim 6 requirement and necessarily is broader. We therefore affirm the holding below on point (b).

The decision of the board is affirmed.

Affirmed.

MARTIN, Judge, sat but did not participate in decision because of illness.